```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                                   :
ZOILA D. ATENCIO,                                                  :
                                                                   :
                                              Plaintiff,           :
                                                                   :
                          -v -                                     :
                                                                   :
U.S. POSTAL SERVICE,                                               :
                                                                   :
                                              Defendant.           :
                                                                   :
------------------------------------------------------------------ X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/19/2015

1:14-cv-7929-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, District Judge:

## I.    INTRODUCTION

Ms. Zoila Atencio, a letter carrier for the United States Postal Service ("USPS"), alleges that she suffered a work-related injury that left her disabled. Upon her return to work, she sought an accommodation so that she could continue delivering mail while maintaining medically-imposed lifting restrictions, but USPS refused to engage in any such discussion and failed to provide an accommodation. Ms. Atencio alleges that she later suffered another work-related injury while trying to move heavy packages, after USPS again refused to provide an accommodation. Ms. Atencio now brings various disability discrimination claims under the Rehabilitation Act and Americans with Disabilities Act.

Ms. Atencio's underlying complaints to USPS's Equal Employment Opportunity (EEO) Center included allegations that her managers intentionally failed to respect her lifting restrictions, and as relief requested that USPS "respect [her] restriction" and provide an "accomoda[tion] assignment." Similarly, Ms. Atencio's EEO charge included allegations that she was subjected to a series of harassing actions taken "in retaliation of [her] EEO activity." Notwithstanding these allegations, USPS contends that Ms. Atencio's current claims for failure to provide a reasonable

accommodation and retaliatory harassment are not reasonably related to the underlying disability discrimination claim that she raised to the EEO, and should therefore be dismissed for failure to exhaust administrative remedies.  The plain language of plaintiff's EEO charge, rather than defendant's narrow characterization of that charge, dictates otherwise.  For the reasons outlined below, defendant's motion to dismiss is GRANTED in part and DENIED in part.

## II.     BACKGROUND[1]

Ms. Zoila Atencio began working for USPS in 2000, and has worked as a letter carrier delivering mail for the Grand Central Station office location in Manhattan since May 2006.  Second Am. Compl. at ¶¶ 11–13.  On August 9, 2011, Ms. Atencio was involved in a work-related accident that left her completely unable to perform her duties as a letter carrier for several months.  *Id.* at ¶¶ 16–19.  Ms. Atencio returned to work on October 18, 2011, but provided her employer with a doctor's note indicating that she needed certain lifting restrictions in place due to her injury and resultant disability.  *Id.* at ¶¶ 19–21.  Ms. Atencio then sought certain accommodations to allow her to continue as a letter carrier while complying with the lifting restrictions, but USPS refused to discuss the appropriate means to provide a reasonable accommodation.  *Id.* at ¶¶ 22–23.  Instead, Ms. Atencio alleges that USPS provided limited and inconsistent accommodations, and intentionally made her duties as a letter carrier more difficult to accomplish.

First, Ms. Atencio alleges that USPS forced her to jump through proverbial daily hoops in order to seek any accommodation for her disability.  Each day that she needed assistance with her route, USPS required Ms. Atencio to make a formal written request using a form provided by her supervisors.  *Id.* at ¶¶ 24, 85–86.  On several occasions, her supervisors refused to provide her with

---

[1] Unless otherwise noted, the facts are taken from the amended complaint, and are accepted as true for the purposes of this Rule 12(b)(6) motion.  *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

the required form and instead instructed her to make the request on a blank sheet of paper—but then subsequently punished Ms. Atencio for failing to file the proper paperwork. *Id.* at ¶¶ 85–95.

Ms. Atencio further alleges that the process by which USPS often accommodated her disability also made it likely that she would be unable to complete her assigned duties. Although she was at times given assistance delivering her mail route, she was often given only partial or no assistance at all. *Id.* at ¶¶ 42, 44. When USPS refused to provide her assistance, Ms. Atencio was instructed to re-pack the mail into smaller bundles so that she would be able to complete delivery on her own. *Id.* But re-packing the mail required additional time, which delayed plaintiff from commencing delivery. *Id.* at ¶ 43. Because letter carriers who fail to complete timely delivery of their routes face disciplinary action and possible termination, the added delay from re-packing the mail increased the likelihood that Ms. Atencio would be unable to complete her assigned route—and accordingly face disciplinary action. *Id.* at ¶¶ 33–38, 41–43. Ms. Atencio was reprimanded at least twice, in January and again in October 2012, for failing to complete delivery of her routes after she was denied assistance. *Id.* at ¶¶ 70–84.

Moreover, Ms. Atencio alleges that she was assigned routes with heavy packages that were especially likely to run afoul of the physical limitations imposed by her doctor, despite other routes being available. *Id.* at ¶¶ 31–32, 35. She alleges that USPS assigned her these routes intentionally—making it more likely that she would be required to spend extra time re-packing bundles of mail so that she could physically deliver them, and in turn increasing the likelihood that she would not complete the delivery of her route and be subjected to disciplinary action. *Id.* at ¶¶ 31–32, 35, 42–43. Thus, the cycle of USPS assigning Ms. Atencio heavy routes, requiring her to request assistance, denying her request, forcing her to re-pack heavy bundles of mail, and threatening to discipline her for failing to complete her delivery routes, continued on an almost daily basis.

Ms. Atencio suffered another work-related injury on January 8, 2013.  Although Ms. Atencio requested assistance moving a heavy carriage containing scanners, she alleges that her supervisor berated her and denied the request, insisting that she move the carriage herself.  *Id.* at ¶¶ 48–50.  Ms. Atencio attempted to do so, but injured herself in the process.  *Id.* at ¶¶ 51–52.  She was forced to leave work early that day due to the injury, but returned to work two days later on January 10, 2013.  *Id.* at ¶¶ 52–53.  Still suffering from the earlier injury, Ms. Atencio again requested assistance with her delivery route.  *Id.* at ¶ 55.  She alleges that her supervisor denied the request and demanded that she complete the route herself, threatening to take her "off the clock" in the process.  *Id.* at ¶ 56.  Ms. Atencio attempted to deliver the route, but was unable to do so and instead reported an on-the-job traumatic injury stemming from the January 8, 2013 incident.  *Id.* at ¶¶ 57–64.  Ms. Atencio has not reported to her work station for duty since January 10, 2013.  *Id.* at ¶ 54.

The following day, Ms. Atencio requested pre-complaint counseling from USPS's Equal Employment Opportunity (EEO) Contact Center.  *Id.* at ¶ 107.  She was provided an "Information for Pre-Complaint Counseling" form, in which Ms. Atencio noted "EEO retaliation," "sex (female)," and "disability" as "Discrimination Factors."  Dkt. No. 27-1.  In a section titled "Description of Incident/Action," Ms. Atencio wrote that on January 10, 2013, she was threatened "to be off the clock," and indicated that the station manager "violated my rights as [an] employee on limited duty."  *Id.*  She also noted that she was previously given "write-ups because of my limitations."  *Id.*  With respect to the resolution sought, Ms. Atencio requested to have "the write-up . . . removed" and to receive an "accommodat[ion] assignment."  *Id.*  During the counseling session, the EEO counselor focused solely on her managers' threat to take her "off the clock" on January 10, 2013, and plaintiff's request to have a prior October 2012 disciplinary letter withdrawn.  *Id.* at ¶ 109.  Despite the express request in Ms. Atencio's EEO submission requesting an "accomoda[tion] assignment," the EEO counselor did not address USPS's refusal to provide

4

reasonable accommodations, and did not grant Ms. Atencio any relief. *Id.* at ¶¶ 109–111. Ms. Atencio was notified of her right to file a formal discrimination complaint on April 2, 2013. *Id.* at ¶ 111.

Ms. Atencio filed a formal complaint of discrimination with the EEO on April 12, 2013. *Id.* at ¶ 112. In her complaint form, she checked the boxes for discrimination on the basis of sex, disability, and retaliation. EEO Complaint of Discrimination, Dkt. No. 20-3. In response to the actions that led her to file the complaint, she wrote that an order was given "to take me off of the clock, knowing I was hurt." *Id.* She further stated that "they knew my limitations of no more [than five pounds lifting]" and "they discriminated against my disability and retaliate[d] [because of her] EEO activity." Ms. Atencio noted prior incidents, stating that she had twice been written up in 2012 because her managers were "trying to get rid of me" and to have her "overdo my limitations as a result my health gets worse." *Id.* With respect to the remedy sought, Ms. Atencio again indicated that she wanted USPS to "respect my restrictions." *Id.*

The EEO dismissed the formal complaint on May 17, 2013. Second Am. Compl. at ¶ 114. The EEO again did not address USPS's refusal to provide reasonable accommodations. *Id.* at ¶ 115. Rather, the EEO framed the sole issue as: "You allege discrimination based on Sex (Female), Physical Disability (Back, shoulder, knee), and Retaliation (Prior EEO activity) when: On January 10, 2013 your Managers told the Supervisor to take you off the clock." Dismissal of Formal EEO Complaint at 1, Dkt. No. 20-2. The EEO found that Ms. Atencio failed to state a claim because there was no evidence that she was ever actually taken off the clock as a result of the January 10, 2013 incident, and therefore was not an "aggrieved employee." Dismissal of Formal EEO Complaint at 2, Dkt. No. 20-2. The EEO also found that Ms. Atencio abandoned her claim regarding the October 2012 letter of warning because she failed to raise that issue in her formal complaint. *Id.* Prior to receiving the EEO's dismissal, Ms. Atencio sought to clarify her claims by

5

submitting an addendum to the EEO on May 18, 2013; however, this was not considered by the EEO.  Second Am. Compl. at ¶ 116.

Ms. Atencio appealed the EEO's decision to the Equal Employment Opportunity Commission ("EEOC") on May 25, 2013.  *Id.* at ¶ 118.  The EEOC agreed with the EEO's dismissal because there was no evidence that she was taken off the clock.  EEOC Decision at 1, Dkt. No. 20-1.  Moreover, the EEOC noted that her appeal focused on "the denial of her disability accommodation," but that this was "not related to the issue in the instant complaint."  *Id.*  Accordingly, the EEOC dismissed her complaint on January 15, 2014.  Second Am. Compl. at ¶ 119.  Ms. Atencio subsequently requested that the EEOC reconsider its decision, but that request was denied on July 31, 2014.  *Id.* at ¶¶ 121–22.  The EEOC advised Ms. Atencio of her right to sue within 90 days, and she filed this action *pro se* on October 21, 2014.  See *id.* at ¶ 126.  She subsequently amended her complaint on February 6, 2015.

Defendant filed a motion to dismiss the amended complaint on February 25, 2015.  The Court gave plaintiff the opportunity to amend her complaint in response to the filing, and she filed a second amended complaint on March 13, 2015.  The second amended complaint brings claims under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, alleging that defendant:  failed to engage in an interactive process to find a reasonable accommodation for plaintiff's disability (Count 1); engaged in retaliatory harassment (Count 2); engaged in disability discrimination on January 8, 2013, which caused her physical injury (Count 3); and misstated plaintiff's claims in the EEO process, and failed to allow her to correct those misstatements (Count 4).  Defendant filed a motion to dismiss plaintiff's second amended complaint on April 3, 2015.

### III. ANALYSIS

#### A. Legal standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts, when accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). While a complaint need not present "detailed factual allegations," *Twombly,* 550 U.S. at 555, legal conclusions, unsupported by factual assertions, are insufficient. *Iqbal,* 556 U.S. at 679.

In considering a motion to dismiss, the Court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir. 2010); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Additionally, "when a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." *Holowecki v. Fed. Exp. Corp.*, 440 F.3d 558, 565–66 (2d Cir. 2006) (brackets omitted) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir. 1995), *aff'd*, 552 U.S. 389 (2008).

Generally, the Court must "construe complaints filed by *pro se* litigants liberally and 'interpret them to raise the strongest arguments that they suggest.'" *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994)). Although plaintiff is appearing *pro se*, she expressly acknowledges that she was assisted by an attorney, David M. Lira, in preparing both her second amended complaint and opposition to defendant's motion to dismiss. Second Am. Compl. at 18 n.1; Pl.'s Decl. Opp'n at 7 n.1, Dkt. No. 29. Applying a liberal *pro se* standard in construing a plaintiff's complaint when she has enjoyed the benefit of legal counsel would ordinarily

lead to an unfair result.  *See CIT Grp./Commercial Servs., Inc. v. Prisco*, 640 F. Supp. 2d 401, 407 (S.D.N.Y. 2009) ("Allowing the Defendant to have the benefit of the liberal pleadings standard of *pro se* parties when he had the assistance of counsel, would be fundamentally unfair."); *Raghavendra v. Trustees of Columbia Univ.*, No. 06-cv-6841(PAC)(HBP), 2008 WL 2696226, at *7 n.5 (S.D.N.Y. July 7, 2008) ("When complaints drafted by attorneys are filed bearing the signature of a plaintiff outwardly proceeding *pro se,* the indulgence extended to the *pro se* party has the perverse effect of skewing the playing field rather than leveling it.") (ellipses omitted) (quoting *Laremont-Lopez v. Se. Tidewater Opportunity Ctr.*, 968 F. Supp. 1075, 1078 (E.D. Va. 1997)); *see also Friedman v. Self Help Cmty. Servs.*, No. 11-cv-3210 (NGG)(JMA), 2015 WL 1246538, at *15–16 (E.D.N.Y. Mar. 17, 2015) (declining to apply liberal *pro se* standard in evaluating complaint drafted by attorney, but applying *pro se* standard to opposition letters in defense of complaint drafted by *pro se* plaintiff).  Thus, in the interest of fairness, the Court does not apply the liberal *pro se* pleading standard in evaluating the plausibility of plaintiff's complaint.

In contrast, the Court applies a more liberal standard in construing plaintiff's EEO complaints.  *See Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 177 (2d Cir. 2005) ("'Loose pleading' is permitted before the EEOC.") (citing *Deravin v. Kerik*, 335 F.3d 195, 202 (2d Cir. 2003)).

### B.  ADA Claims

As a preliminary matter, plaintiff brings each of her claims under both the ADA and the Rehabilitation Act.  However, "[a]s a federal employee, [plaintiff] has no remedy for employment discrimination under the ADA."  *Rivera v. Heyman*, 157 F.3d 101, 103 (2d Cir. 1998); *see also Lamphear v. Potter*, No. 09-1640 (TLM), 2012 WL 3043108, at *2 (D. Conn. July 25, 2012) ("[T]he ADA specifically excludes the federal government, including the USPS, in its capacity as employer, from its coverage.").  Rather, her "sole claim for discrimination on the basis of disability is under the Rehabilitation Act, if anywhere."  *Rivera*, 157 F.3d at 103; *accord Carby v. Holder*, No. 11-cv-5775

(DLC), 2013 WL 3481722, at *8 n.9 (S.D.N.Y. July 10, 2013) ("In the Second Circuit, Section 501 of the Rehabilitation Act provides the exclusive route by which federal employees may raise claims of employment discrimination on the basis of disability."). Therefore, any claims asserted by plaintiff under the ADA must be—and now are—dismissed with prejudice. Nonetheless, "[t]o determine whether employers have violated the Rehabilitation Act, courts use the standards set forth in the [ADA]." *Lucenti v. Potter*, 432 F. Supp. 2d 347, 360 (S.D.N.Y. 2006); 29 U.S.C. § 791(f) ("The standards used to determine whether this section has been violated in a complaint alleging nonaffirmative action employment discrimination under this section shall be the standards applied under title I of the [ADA] and the provisions of sections 501 through 504, and 510, of the [ADA], as such sections relate to employment.").

### C. Exhaustion of Administrative Remedies

"EEOC regulations require an employee suing the federal government under the Rehabilitation Act to exhaust certain administrative remedies before initiating a suit in the district court." *Boos v. Runyon*, 201 F.3d 178, 181 (2d Cir. 2000).[2] Specifically, "an aggrieved agency employee must first seek EEO counseling within forty-five days of the allegedly discriminatory act" and "then file an EEO complaint with the agency that allegedly discriminated against the complainant." *Id.* (internal quotation marks omitted). "As with claims under Title VII, employment discrimination claims under the Rehabilitation Act are barred unless the employee has exhausted available administrative remedies." *Hodges v. Attorney Gen. of U.S.*, 976 F. Supp. 2d 480, 490 (S.D.N.Y. 2013) (internal quotation marks and citation omitted). In order for plaintiff to satisfy the exhaustion requirement for a claim of alleged discrimination, the claim must have been either

---

[2] The Second Circuit "has treated the requirement that a federal employee bring a complaint to his or her EEO for resolution, *see* 29 C.F.R. § 1614.105, as analogous to the requirement that a private sector employee first bring a complaint to the attention of the EEOC for resolution." *Mathirampuzha v. Potter*, 548 F.3d 70, 75 (2d Cir. 2008) (brackets omitted) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 150 (2d Cir. 2003)).

9

explicitly raised during the EEO process or be "reasonably related" to claims that were. *See Williams v. New York City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006).

A claim of alleged discrimination is "reasonably related" to a claim raised during the EEO process when: "(1) the claim would fall within the reasonably expected scope of an [EEO] investigation of the charges of discrimination; (2) it alleges retaliation for filing the [EEO] charge; or (3) the plaintiff 'alleges further incidents of discrimination carried out in precisely the same manner alleged in the [EEO] charge.'" *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002) (quoting *Butts v. City of N.Y. Dep't of Hous. Preservation and Dev.,* 990 F.2d 1397, 1402–03 (2d Cir. 1993)). Whether claims are "reasonably related" is a "fact-intensive analysis." *Mathirampuzha v. Potter*, 548 F.3d 70, 76 (2d Cir. 2008). "[T]he focus should be on the factual allegations made in the EEO charge itself, describing the discriminatory conduct about which a plaintiff is grieving." *Id.* (brackets omitted) (quoting *Deravin*, 335 F.3d at 201). Moreover, "[i]t is the substance of the charge and not its label that controls." *Id.* (quoting *Deravin*, 335 F.3d at 201)). "The central question is whether the complaint filed with the EEO gave the agency adequate notice to investigate discrimination on both bases." *Mathirampuzha*, 548 F.3d at 77 (brackets omitted) (quoting *Williams*, 458 F.3d at 70). Claims based on "a wholly different type of discrimination than initially asserted in the [EEO] charge" will not generally be permitted. *Best v. Duane Reade Drugs*, No. 14-cv-2648 (CM), 2014 WL 5810105, at *4 (S.D.N.Y. Nov. 6, 2014).

Defendant argues that plaintiff's claims for failure to engage in an interactive process and retaliatory harassment are not reasonably related to her EEO complaint, and must therefore be dismissed for failure to exhaust administrative remedies. The Court addresses each of plaintiff's claims separately.

### 1. Interactive Process to Provide Reasonable Accommodations

"Section 501 of the Rehabilitation Act establishes a program within the federal government to encourage the employment of individuals with disabilities." *Rivera*, 157 F.3d at 103.  Using the standards set forth in the ADA, Section 501 bars federal agencies from discrimination on the basis of an individual's disability.  29 U.S.C. § 791(f); 42 U.S.C. § 12112(a).  The ADA defines discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business . . . ."  42 U.S.C. § 12112(b)(5)(A).  An employee suing for failure to make such reasonable accommodations must plausibly allege that:  "(1) plaintiff is a person with a disability under the meaning of the [Rehabilitation Act]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."  *Rodal v. Anesthesia Grp. of Onondaga, P.C.,* 369 F.3d 113, 118 (2d Cir. 2004).

Count 1 of the complaint alleges that USPS failed to engage in an interactive process to identify a reasonable accommodation for plaintiff's disability.  "[EEOC] regulations issued pursuant to the ADA, which are informative to resolution of claims under the Rehabilitation Act, contemplate an ongoing, informal, and interactive process that 'should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.'" *Quadir v. New York State Dep't of Labor*, 39 F. Supp. 3d 528, 539–40 (S.D.N.Y. 2014) (quoting 29 C.F.R. § 1630.2)).  Notwithstanding, "[a]n employer's failure to engage in a sufficient interactive process does not form the basis of a claim under the ADA" unless a plaintiff "establishes that, at least with the aid of some identified accommodation, she was qualified for the position at issue." *McBride v. BIC Consumer Products Mfg. Co.*, 583 F.3d 92, 101 (2d Cir. 2009).

11

Defendant argues that plaintiff's failure to accommodate claim is not reasonably related to her underlying disability discrimination claim. Defendant's argument is premised on a narrow characterization of the EEO charge, focused exclusively on plaintiff's allegation that her managers discriminated against her by threatening to take her off the clock. On that premise, defendant contends that the alleged discriminatory threat did not put the EEO on notice of plaintiff's claim that defendant also failed to accommodate her disability. The Court disagrees with defendant's constrained reading of the charge.

The focus of plaintiff's EEO complaint was not simply on the threat to take her off the clock—it was defendant's refusal to provide her reasonable accommodations. Indeed, in her hand-written EEO complaint, plaintiff noted that her managers were trying to get her to "overdo [her] limitations" on previous occasions, despite knowing that her medical restrictions prevented her from lifting more than five pounds. Notably, the remedy she sought had nothing to do with whether she was put "off the clock;" she requested that defendant "respect [her] restrictions." Thus, the substance of her EEO complaint alleges that plaintiff had medical limitations due to a disability, that defendant was aware of those limitations, and that plaintiff wanted defendant to begin respecting the medical limitations going forward. In other words, it asserts that defendant failed to provide an accommodation for plaintiff's disability.

Defendant's pinched presentation of plaintiff's EEO complaint is simply not supported by its text—the complaint plainly put the EEO on notice of a failure to accommodate claim. Plaintiff's claim for failure to engage in an interactive process to find a reasonable accommodation falls within the reasonably expected scope of an EEO investigation into such a claim. Defendant's motion to dismiss Count 1 of the complaint is, therefore, DENIED.

### 2. Retaliatory Harassment

Plaintiff claims that she was subjected to retaliatory harassment after she sought an accommodation for her disability and after bringing EEO complaints for disability discrimination. In order to state a claim for retaliation under the Rehabilitation Act, plaintiff must plausibly allege that: "(1) [she] engaged in an activity protected by [the Rehabilitation Act]; (2) the employer was aware of this activity; (3) the employer took adverse employment action against [her]; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). Claims of retaliation brought under the Rehabilitation Act "are analyzed under the same burden-shifting framework established for Title VII cases." *Miller*, 814 F. Supp. 2d at 313 (quoting *Treglia*, 313 F.3d at 719). "[R]etaliatory harassment may constitute an actionable adverse employment action if it works a materially adverse change in the terms and conditions of employment." *Gregory v. Daly*, 243 F.3d 687, 701 (2d Cir. 2001) *as amended* (Apr. 20, 2001) (internal quotation marks omitted) (quoting *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999)).

For similar reasons to those described above, the substance of plaintiff's EEO complaint put the EEO on notice of her retaliation claim. First, plaintiff checked the box for "retaliation" as the type of discrimination alleged. Moreover, the EEO complaint alleges a series of actions taken "in retaliation of [plaintiff's] EEO activity" by her managers, including: threatening to take her off the clock; having her "written up" twice in 2012 with the intent "to get rid of [her];" and attempting to have her "overdo [her lifting] limitations," causing her health to get worse. Plaintiff's EEO complaint thus alleges repeated conduct taken against her taken after defendant was made aware of her disability and in retaliation for EEO activity. On the face of the complaint, the EEO was put on notice of plaintiff's retaliatory harassment claim.

In any event, plaintiff's claim for retaliatory harassment is reasonably related to her underlying disability discrimination claim because the EEO's investigation "would require inquiry into the same facts necessary" to bring such a claim. *See Montanez v. City of New York*, No. 09-cv-5652 (SJ)(SMG), 2012 WL 2374205, at *2 (E.D.N.Y. June 22, 2012) (plaintiff's race-based hostile work environment claim was reasonably related to race-based discrimination claim because an investigation into the latter "would require inquiry into the same facts necessary to bring a hostile work environment claim."); *cf. Deravin v. Kerik,* 335 F.3d at 201 (cautioning courts not to "draw overly fine distinctions between race and national origin claims" for exhaustion purposes because the two types of claims will often present identical factual issues). Accordingly, defendant's motion to dismiss Count 2 of the complaint is DENIED.

### D. Failure to Allege Adverse Employment Action

Defendant next argues that plaintiff's claims for disability discrimination (Count 3) and retaliation (Count 4) must be dismissed because they fail to allege an adverse employment action. The Second Circuit has defined an adverse employment action as "a materially adverse change in the terms and conditions of employment." *Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (internal quotation marks omitted). "To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (internal quotation marks omitted). Examples of adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Mathirampuzha*, 548 F.3d at 78 (quoting *Sanders*, 361 F.3d at 755).

### 1. Disability Discrimination

In order to state a claim for disability discrimination under the Rehabilitation Act, plaintiff must plausibly allege that: "(1) plaintiff's employer is subject to the [Rehabilitation Act]; (2) plaintiff was disabled within the meaning of the [Rehabilitation Act]; (3) plaintiff was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of her disability." *Jacques v. DiMarzio, Inc.,* 386 F.3d 192, 198 (2d Cir. 2004) (brackets omitted) (quoting *Cameron v. Cmty. Aid for Retarded Children, Inc.,* 335 F.3d 60, 63 (2d Cir. 2003)). Defendant contends that the complaint fails to state a claim for disability discrimination because plaintiff did not suffer an adverse employment action when she was threatened to be taken "off the clock." The Court agrees that plaintiff fails to plausibly allege an adverse employment action.

Neither defendant's refusal to provide plaintiff assistance with moving the heavy carriage on January 8, 2013, nor the mere threat to take her "off the clock" on January 10, 2013, constitute an adverse employment action as a matter of law. *See Thomas v. Bergdorf Goodman, Inc.*, No. 03-cv-3066 (SAS), 2004 WL 2979960, at *10 (S.D.N.Y. Dec. 22, 2004) ("The mere threat of disciplinary action, including the threat of termination, does not constitute an adverse action materially altering the conditions of employment."); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 762 (1998) ("A tangible employment action in most cases inflicts direct economic harm."). Plaintiff seemingly concedes in her opposition that the complaint does not allege an adverse employment; she instead attempts to clarify that her third cause of action actually alleges a "failure to accommodate leading to physical injury." Because plaintiff had the assistance of an attorney in preparing the complaint, the Court will not liberally construe the third cause of action to allege a failure to accommodate. Defendant's motion to dismiss Count 3 of the complaint is GRANTED, but the Court grants plaintiff leave to re-plead a claim for failure to accommodate as set forth in her opposition.

### 2. Retaliatory Misstatement of Claims

Defendant similarly argues that plaintiff's fourth cause of action for retaliation must be dismissed for failure to allege an adverse employment action. An employer's action is "materially adverse" within the context of a retaliation claim "where it is 'harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Hodges*, 976 F. Supp. 2d at 494 (brackets omitted) (quoting *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 57 (2006)).

Plaintiff argues that defendant retaliated against her during the EEO process in two ways: (1) by misstating and narrowly construing her informal and formal complaints, and (2) by not allowing her to correct the ensuing misstatements. Plaintiff reasons that both acts denied her a substantive right to seek a remedy for discriminatory conduct, and on that basis, asserts that she suffered an adverse employment action. The Court disagrees; plaintiff's complaint alleges the very same discrimination claims she contends that she was prevented from bringing. Even if the EEO misstated her claims, as alleged, she has not suffered an adverse employment action.

Plaintiff's claim is similar to a retaliatory failure to investigate claim; in essence, she alleges that the EEO inadequately investigated her claims by narrowly construing them. Thus, the Second Circuit's opinion in *Fincher v. Depository Trust & Clearing Corp.* is instructive. 604 F.3d 712 (2d Cir. 2010). There, the plaintiff brought a claim for retaliation under § 1981, alleging that the defendant failed to investigate her underlying discrimination claim.[3] *Id.* at 721. The Second Circuit upheld the district court's grant of summary judgment in favor of the defendant, finding that ordinarily "an employer's failure to investigate a complaint of discrimination cannot be considered an adverse employment action taken in retaliation for the filing of the same discrimination complaint." *Id.* The

---

[3] Retaliation claims made under § 1981 are also evaluated using the same burden-shifting framework established for Title VII cases. *Fincher*, 604 F.3d at 720.

16

Second Circuit explained that "[a]n employee whose complaint is not investigated cannot be said to have thereby suffered a punishment for bringing that same complaint: Her situation in the wake of her having made the complaint is the same as it would have been had she not brought the complaint or had the complaint been investigated but denied for good reason or for none at all." *Id.* Thus, unless the employer's failure to investigate is alleged to be "in retaliation for some separate, protected act by the plaintiff," [4] the employee lacks a viable claim for retaliatory failure to investigate. *Id.* at 722.

Similarly, plaintiff does not allege that her complaint was narrowly construed or misstated in retaliation for a separate, protected act. Her situation is the same as though her complaint was investigated "but denied for good reason or none at all." *Fincher*, 604 F.3d at 721. Thus, plaintiff has failed to allege that she suffered an adverse employment action, and her complaint fails to state a claim for retaliation. *Accord Pilgrim v. McGraw-Hill Companies, Inc.*, 599 F. Supp. 2d 462, 478 (S.D.N.Y. 2009) (finding that plaintiff's claim for retaliatory failure to investigate underlying discrimination claim failed as a matter of law under Title VII); *see also Strujan v. Teachers Coll. Columbia Univ.*, No. 08-cv-9589 (WHP)(HBP), 2010 WL 3466301, at *10 (S.D.N.Y. Aug. 11, 2010) (finding that defendants' failure to respond to complaints of discrimination "does not constitute actionable retaliatory conduct because it would not deter a reasonable person from making a complaint of discrimination") *report and recommendation adopted*, No. 08-cv-9589, 2010 WL 3466251 (S.D.N.Y. Sept. 3, 2010).

---

[4] *Rochon v. Gonzales,* 438 F.3d 1211 (D.C. Cir. 2006) was cited by the Second Circuit in *Fincher* as an example of such a scenario. There, an employer failed to investigate an employee's complaint of a death threat against him, in retaliation for an earlier complaint of discrimination filed by the same employee. *Rochon v. Gonzales,* 438 F.3d at 1219–20. Because the initial discrimination complaint resulted in a separate retaliatory failure to investigate the subsequent death threat, the D.C. Circuit concluded that the employee stated a claim for retaliation under Title VII. *Id.*

Moreover, plaintiff fails to plausibly allege that the EEO's failure to consider her addendum, which attempted to clarify the scope of her claims, was improper.  29 C.F.R. § 1614.106 provides that a complaint may be amended "at any time *prior* to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint."  29 C.F.R. § 1614.106(d) (emphasis added).  Plaintiff concedes that she submitted her addendum on May 18, 2013—one day after the EEO issued its decision dismissing her complaint.  Given that the EEO had already dismissed plaintiff's complaint by the time she submitted her addendum, the EEO properly did not consider it.

Although the complaint is devoid of any facts suggesting that the EEO misstated or narrowly construed plaintiff's claims "in retaliation for some separate, protected act by plaintiff," *Fincher*, 604 F.3d at 722, the Court, in an abundance of caution, grants plaintiff leave to re-plead.  Notwithstanding, the Court reiterates that in order to state a claim, plaintiff must allege "harms resulting from, but separate from the disposition of, [her] initial complaints of discrimination."  *Id.*  Defendant's motion to dismiss Count 4 of the complaint is GRANTED.

## IV.    CONCLUSION

For the reasons outlined above, defendant's motion to dismiss is GRANTED in part and DENIED in part.  The Clerk of Court is directed to terminate the motion pending at Docket Number 25.

SO ORDERED.

Dated:  November 19, 2015
New York, New York

_____
GREGORY H. WOODS
United States District Judge